Case No. 14-1263 et al. Fort Dearborn Company Petitioner v. National Labor Relations Board Mr. Marcus for the Petitioner, Ms. Collins for the Respondent Good morning. May it please the Court, I'm Richard Marcus in the firm of Ogletree, Deakins, Nash, Smoke, and Stewart, representing Petitioner. The undisputed principles of the right-line case that is applicable to every NLRA discharge or discipline case were, in our estimation, not followed. And as we've argued in our brief, were not followed in this proceeding. The test is whether or not the employer would have imposed the same consequences on the alleged discriminatee, whether he or she had not been involved in protected activity. In other words, whether there was any anti-union motivation. As this Court's decision in Sutter East Bay Hospitals makes very clear, critical to that investigation and that examination is the question of whether the employer had a good faith belief that the employee did or didn't do certain things. In this case, despite the Petitioner's repeated urging, the Board ignored the question of good faith belief completely. And we submit that the Board's consideration of good faith belief in its brief is hopelessly flawed. Notably, the employer's good faith beliefs are supported by and derived from undisputed testimony and exhibits in the case. First of all, the belief of the employer that on August 12th, and by the way, all of this occurred in 2010. The belief of the employer that on August 12th, 2010, Marcus Hedger left his workstation at a critical time for approximately one hour to give a plant tour to a friend of his is supported by the record fully and by undisputed evidence in the record. But the point is, when you take the comments, the we're watching you, we're going to catch you, we're going to fire you, those comments, and then you pair that together with the fact that other people similarly situated were not so disappointed. Your Honor, I would submit that that goes to two other questions. One is whether or not the Board sustained its requirement, General Counsel sustained its requirement to prove anti-union motivation. And then the second part is whether or not the employer's claim was pretextual. But before you get to that, what Sussex says is that the employer has a good faith belief that is benign, the belief itself is benign. In other words, they would have done it even if somebody was or was not a union activist. But I think that's the point from the similarly situated evidence, is that that, according to the Board, suggests that it would not have been done. Which gets to the question of pretext, which I'll be happy to discuss. But first of all, I would just impress upon the Court, Mr. Hedger did not deny that he told the company he was gone for an hour, in effect. He told the company he left when wash-up began. There is documentary evidence that wash-up began at 7.45. He did not deny that he left his friend. As a matter of fact, there's a video of him leaving his friend at 8.51, an hour and several minutes after he left his workstation. He did not deny that. The Board just completely refuses to look at that. And indeed, the Administrative Law Judge says the fact that the employer relied on that is proof of bad faith. Well, the ALJ made a finding about the preponderance of the evidence that Mr. Hedger was gone for about 11 minutes. Yes, but what we're saying is the question, and the question that has to be addressed under Sussex, is what did the employer believe? And Mr. Hedger never said, no, no, no, no, I didn't leave when we were going into wash-up. He said it on trial, but he didn't say it at the time. He told the company, he repeatedly told the company, I left when wash-up was beginning. And everybody knows that that was at 7.45 p.m. And he came back at 8.51 p.m. Then he told the company I was only gone for two minutes. It's impossible. So we have the good faith belief. Now, getting to the question, Your Honor, Judge Kavanaugh, you raised the question of the pretext, okay? First of all, the board says there was a widespread practice of allowing friends to walk through the plant. It's absolute fabrication. There's nothing in the record that says it was friends. They made that up. The board claims that the employer's reasons for discharging Hedger were, one, bringing the unauthorized visitor into the plant, and, two, not responding truthfully on August 18th, completely overlooking the fact that on August 23rd, when he asked who was this person, he said he refused to answer. He refused to tell the company. Third, the board claims that a one-day suspension of two other individuals after the fact is proof that it was discriminatory in the form of the discharge. The fact is that the one-day suspension that occurred involved two individuals who were forthright in explaining that they had allowed a former employee, a retiree, into the plant. I see that my time, I'd like to reserve some time for rebuttal, if I may, unless the court has some questions. All right. Ms. Collins? May it please the court? Good morning. My name is Valerie Collins, and I represent the National Labor Relations Board. Substantial evidence supports both of the findings, both of the board's findings in this case. First, that the company unlawfully threatened Mr. Hedger at the bargaining table when it threatened to watch, catch, and fire him. And, two, substantial evidence supports the board's finding that two months later, the company made good on that threat and, indeed, did fire him. I'm going to go straight to the discharge issue, unless the court has questions about the threat. And I think that part of the, well, the fatal flaw in the company's argument is the way it's approaching right line and Sutter East Bay. Sutter East Bay is about pretext. Reasonable belief is not an independent, you know, no violation automatically if there's a reasonable belief that the employee engaged in misconduct. In context, what that goes to is if the employer had a reasonable good faith belief and acted as they normally would under a similar circumstance, then the employer is able to show that their reason is not pretextual. So it's not an independent inquiry. It's necessarily linked with their later behavior. And in this case, the board had ample support in the record that the company simply, it was unprecedented, essentially, from the very beginning, the investigation and certainly the later suspension, indefinite suspension and discharge, that it didn't act accordingly as it normally would. And I think the company's main issue is that it is viewing Sutter East Bay as if- It's a company who refused to answer bona fide questions from management. It actually is not. There were other employees in this record, the two people who worked with Mr. Hedger at his workstation. Mr. Sass explicitly told the company, I'm not cooperating with your investigation and I'm not going to answer your questions because I don't want to be involved. There was absolutely nothing done. There's no discipline whatsoever. But for whatever reason, you know, Mr. Hedger- Well, he wasn't the person who let this cyclist in. He was not. So that if he says, I just don't want to get involved, he wasn't facing any disciplinary action for what he did. He was saying, I just don't want to get involved in the disciplinary action or not that you are going to take against a fellow employee. I think that is an accurate statement, but it definitely undercuts the company's claim that it was unprecedented to have non-cooperation with an investigation. It wasn't. And the company did absolutely nothing after he decided to not cooperate. But there's such a difference between someone who says, I may or may not be a witness, I may or may not know something, but I'm not the target. It seems to me that if the target of the investigation lies and says, I don't remember, refuses to give the name of the person who came onto company property, that that is unprecedented in this record. It was. It is. Mr. Hedger's behaviors are definitely different because the investigation, he was the target of the investigation. I agree with that. The company gave two reasons for his discharge. One of them being his, they call it dishonesty. He basically didn't cooperate in the investigation. And also for bringing an unauthorized, I think it was unauthorized visitors, what the termination letter says, into the plant. So there were two reasons that the company relied on. Now, just on its face, it's really clear that Mr. Hedger never brought anyone into the plant and no one says that. But even if you read the reason that he brought an unauthorized visitor into the plant as he escorted, you know, his friend through the plant. Even if you, you know, make that logical leap, it's, the record is, there's ample record evidence that this is, this was really ordinary. I mean, there's evidence that the doors were open for ventilation, food delivery people could come in and out. They walked onto the floor and said, you know, hey, did anybody order pizza? People's family members came into the plant. Truck drivers came into the plant, into the facility to go to the vending machines, UPS drivers. So why was this fellow kept at the front desk? As I understand it, Hedger was paged and they kept him there for some reason. He wasn't delivering food. He wasn't a relative. So what was the evidence as to why they kept him there? They must have thought we can't have somebody whom we don't know walking through or riding through the plant until whoever it is he says he wants to see comes and picks him up. I don't think the record, and I'm sure opposing counsel will correct me if I'm wrong, I think the record is silent on why he was kept at the door, at the shipping entrance. I simply don't know because I don't think that evidence is in the record. But what is in the record is that nobody thought this was strange. People thought this was kind of ordinary. And I think that that's demonstrated by the fact that nobody reported this to anyone. I had to sign in, didn't I? So during normal business hours, the company had a sign-in procedure. But on the second shift, when this all occurred, there was no sign-in. There was nobody in the office. He gave a fake name then. There's testimony that he told someone his name was Martin something. There's a little ambiguity there in terms of whether the person just misheard him or what. But one of the employees definitely thought his name was Martin Fletcher. I think it was. That's true. So he literally could not sign in. And no one does sign in on the second shift. And obviously, for some reason, he couldn't go onto the plant floor until Hedger appeared. Yes. All right. So that is different from a food delivery or a family member. That is true. Other people did walk unescorted onto the plant floor. And the company is essentially arguing that because this guest, Schmidt, was escorted onto the facility floor, that somehow that warrants termination and other times does not, which doesn't make a ton of sense. I also just wanted to just point the court's attention to Sutter East Bay because I think language within the case itself is really helpful. Now, Sutter Bay, you know, it's a similar situation where the board went through a right-line analysis. The employer is arguing that, you know, the employee had some misconduct. It was a variety of misconduct in Sutter Bay. And the court's holding was that in a case where the evidence is disputed about the misconduct, it makes sense to, or not just makes sense, the board should evaluate whether the employer had a reasonable good faith belief. And essentially what the company wants you to do is stop reading right there. But, of course, there's a reason. The board should evaluate and look at the company's reasonable good faith belief in order to determine whether it acted accordingly. And you cannot divorce those two issues. Tell me what's disputed. You said where there's a dispute. What's disputed here? I'm sorry, can you repeat your question? What's disputed here? You're saying that where the test is, if there's evidence in dispute, then we go to the reasonable belief, whatever. What is in dispute here? Here it's the actual time he was away from his workstation. So there's conflicting evidence as to whether he left at 745, and that's what the company is saying that they believe. They thought he left at 745. And there's conflict between that and what the ALJ found, that he left his workstation at 840. And so in Sutter East Bay, the conflict or the dispute was essentially whether or not the employee engaged in misconduct. And so Sutter East Bay says, wait, board, you not only have to figure out if the misconduct actually occurred, but you also have to look at the reasonable good faith belief. Because if the employer had one and acted according to its past practices and acted accordingly, then they don't have that motivation and they've met their right line burden. But here, when you have such a detailed explanation as to how out of the ordinary the company's actions were, it doesn't make a difference whether they had a reasonable good faith belief. And so if this court says, board, you have to decide good faith belief regardless, it's literally pointless. It does not impact the violation whatsoever. I see that my time is up. If there are no more questions, we ask that the court enforce the board's order in full. All right, thank you. Thank you. Mr. Marcus has three minutes. Okay. Just a couple of points, Your Honor. With regard to the good faith belief, you're right, there is no dispute of fact as to what the basis for the good faith belief was. Mr. Hedger, it is undisputed in the record, he told them he was gone in effect. He told them he was gone for an hour. He said he left at point X, he came back at point Y, and the evidence showed that the distance between point X and Y was over an hour. All right. Mr. Sass, they referred to all these people who... Why does that matter? I guess that's the point. If that... Because accepting that, the question still is, would the same, and Saturday Space says this, would the same discipline have been imposed? And that gets... Absent the union activity or the threat. That gets to the question as to, you know, they say this is a common thing. It wasn't a common thing that you'd walk for an hour with somebody in the printing industry through the plant. Well, what if it was only five minutes? If it had only been five minutes... The timing is not what's important. Oh, the timing is very important, Your Honor. Well, what's important to me anyway is the unprecedented nature of this tour through the plant, whether it was five minutes or whether it was an hour. And then the unprecedented, I mean, the reaction of the company was to fire him because he refused to cooperate at first with the investigation. Well, Your Honor, if it had been five minutes, we would have been left with the question, is that appropriate, given the fact that they had never fired anybody for talking with somebody else in the plant for five minutes. But this was... It wasn't talking. I thought it was undisputed that he took this fellow... He took him all the way through the operation of the plant while it was in full operation. One other thing I would just add. You say that, but it's not clear. The ALJ says it's not clear what this visitor would have seen. Yes, and in doing so, the ALJ completely overlooked part of the record. What the ALJ failed to notice that was going on was full production, including the existence of these sheets that were so critical to the employer's operation. And indeed, Mr. Hedger says this guy had not seen sheets like that. He was very interested in seeing them. What I don't understand then is, A, why no one spoke up, managers who were there, and secondly, all these people who were allowed in for whatever reason, family, delivery people. Let me answer those two questions, Your Honor. They all could have seen this process. Let me answer those two questions, if I may. And yet, they could have been undercover, as it were. The pizza man is really a spy for the company's competitor. Let me answer those two questions, if I may. First of all, the Board makes much of the fact that other people didn't say anything. And indeed, the record shows that the company asked three of the lead men, and the Board said, We're not even going to put any weight into this. But the lead men said, Well, he's the chief steward. He was with another union officer. We thought it had been approved. We thought it was okay. Approved by whom? Well, because remember, these were not supervisors who were reviewing this. These were lead men. They were members of the bargaining unit. And with respect to that, the fact is that the other people, during the day, they were very careful about keeping people out of the plant. And admittedly, in the evening, it was lax. And as we point out, they had this very, very significant nondisclosure provision that was an agreement that had been negotiated by the union and the employer. And the company believed that the people would adhere to it. Unless there are any further questions. Thank you. Thank you.
judges: Henderson, Rogers, Kavanaugh